May it please the Court, Gary Yerman on behalf of Petitioner. As the Court is aware, my client the Petitioner filed a motion to reopen her case four years after initially filing an application for asylum through her immigration attorney-slash-agency. She waited. Is it really attorney or is it a notary public? It's a notary public, correct. Is there any recognition of the immigration administration of the importance of the notary? Or is this off the record? I'll find the case, Your Honor, but the Ninth Circuit has recognized notary publics in the sense that people are duped by agencies holding themselves out as legal consultants. So whether you're claiming it's a valid lawyer or an agency holding themselves out as a law firm, you have a claim for ineffective assistance to counsel against both parties if the facts arise. We have cases, actually, that are more specific than that. The Gridiana case, which was just last year, we basically said that when you know the person is an attorney that they can't qualify under this exceptional circumstance under ineffective assistance of counsel. So I don't think it's so clear that your client can even make it through the gateway. Well, Your Honor, I would just submit that neither the immigration judge nor the BIA found that the Petitioner lacked a valid ineffective assistance claim. In their decision, what they discuss is the due diligence that my client exercised after making an ineffective assistance claim. Well, that would be helpful to jump right to that because that seems to me to be the nub of the thing. So let's just assume that we'll just give your client the benefit of the doubt, really, on the immigration consultant. Okay. Then we have the May 2, 2006 letter to do with this consultant, and then the petition isn't the motion to reopen isn't filed until March 9, 2007. Correct. That's kind of the difficulty you have to overcome. And that's even if we apply equitable tolling. Correct. Every day. Correct. And if we assume that we're going to apply equitable tolling, we have to assess this claim under the court's decision in Abagyan, A-V-A-G-Y-A-N, 2011. And to assess whether the Petitioner exercised due diligence, it's set out a three-part standard. So we have to apply the facts to that standard. And the first question is to determine when a reasonable person should suspect that there was fraud or an error. All right? So in 2002, the Petitioner was ordered removed. Four years later, she contacted New Counsel, my office. We did a freedom of information request. We received that file, and it was determined, it was discovered that she was ordered removed. So the first question is, did she wait too long? Was that four years too long of a wait to go seek New Counsel? Wait a minute, New Counsel. I thought the presiding judge indicated to you, let's just skip that part, because you've got four different cases that are somewhat inconsistent in our court in terms of the points you're dealing with now. But on the issue of the equitable tolling and whether your client filed a timely motion to reopen, that's a whole different issue. And here, as I understand it, by no later than May 2, 2006, your client sent a letter to this Notario Publico informing her that she was planning to file a complaint with the authorities regarding her deficient performance. So no later than that day, your client specifically knew that there was deficient performance and yet did nothing to reopen for 307 days, which is 127 days late, even if we do apply equitable tolling. So how do we help you on that? I don't know of any case that gives you relief under those circumstances. Can you help me with some case? Well, again, I would point back to Avagyan because what you have to assess is under facts specific to this case, was it reasonable for her to wait that amount of time from May 2006 until March 2007? She knew there was deficient performance. She absolutely knew. She's the one that wrote it. Correct. So in the facts in our case, what we have is we have a two element motion to reopen. One is based upon the ineffective assistance to counsel by a prior attorney. Two is the claim that she fears going back to China because the family population laws have increased. They've become more significant. Wait a minute. I thought it was going the other way. Tell me what that comes about. Well, that was part of her claim in the motion to reopen. The first ineffective. The second was I fear going back because I don't want to be sterilized. So what she did was in August 2006, two, three months after she discovered the ineffective, she signed her I-589 asylum application, which must accompany under the regulations the motion to reopen. Then we asked her to please obtain evidence that she claims exists of people in her area of China being forced to undergo sterilization. And if you look at the record, you'll see what she did. And she didn't sit around and do nothing. She obtained a letter from a neighbor in China, and it's dated November 2006. And in that letter, it claims we had our first child in 1998. 2006, we had our second child. I was forced to undergo sterilization. Here's a copy of my ID. Here's a copy of my husband's ID. Here's a copy of the birth certificate. So that November letter was evidence that she was seeking to support her motion to reopen, which is required. So, yes, she did wait. In hindsight, maybe it would have been best just to file to preserve. That happens all the time. Because if there truly are changed country conditions, then you have this exception to the jurisdictional bar. So what you do is you file your motion to reopen within 180 days. And then if you find changed country conditions, which, of course, here the BIA didn't think they actually had changed, but if there were, that wouldn't be a problem. And I agree with the Court. But I think in hindsight, it would have been better to file the motion to reopen based upon an ineffective within 100 days of discovery on May 6th. But if we look at the persecution she's alleging happened and could happen, I think that is superior to the extra amount of time she used before filing the motion to reopen. She's claiming she was persecuted. Well, see, that's what I'm struggling with, counsel. I mean, I'm empathetic to the client. I'm really sorry that she's in this situation. But the reality is we've got to follow the law. And there are certain bases for equitable tolling, but most of them deal with the situation where the person simply doesn't know. They deal with a notario publico. They have no technical skills at all. The notario has deceived them and so on. Okay, even if we concede all that, she clearly knew by May 2nd that this notario had led her down the primrose path, was clearly deficient. Did she go get an attorney then? Did she go get somebody to help her right away? No, apparently not. Maybe she did eventually. But nobody did anything during the requisite time period that she had. Were we to, you know, make up out of whole cloth something that this gives some relief, there are thousands of cases that would pour through this exception, because the reality is it's like a statute of limitations. They can seem very unjust. I get that. But the legislature and the executive have the right to set these bars so they can ultimately get some finality to it. And in this case, we don't even get to this point unless we just assume that we get past the first issue, which we're saying for purposes of our discussion we're doing. Other than the Evangeline case, which I don't frankly find at all persuasive in this situation, do you have any other authority that might help your situation? Your Honor, I don't. This Ninth Circuit has spoken on this issue. Evangeline is the most recent precedent case. There are no sister courts that have any different interpretation. I would only submit ---- But what we do, you know, obviously you can't have any more cases than exist, so it's not your fault. I mean, you kind of have to deal with the law as dealt to you. But apart from even if we look at Evangeline and say, well, we need to figure her case out under that, you have the immigration judge and then the BIA adopting the immigration judge basically saying that in the immigration judge's view that there wasn't due diligence, which is kind of a factual legal finding. I'm not sure that even under Evangeline we could, unless we had some extraordinary basis, just negate that finding. That's the finding we really ---- that you're really appealing from, it seems. So do you have any comment on that? Your Honor, if I was writing the decision for the Court, I would not set a precedent in this case. I would say under Evangeline, the petitioner met her responsibility of due diligence, and I would point to the August 2006 signature of her I-589 application, which accompanies her motion to reopen, to say that was due diligence. But we have her moving to New York sometime between 2002 and 2006. Right. And marrying and having her first child in 2006 and apparently the second one in 2007, and not apparently getting any communication from this notary. Now, do we lay the blame to the Court and the notary and other persons, or has there been any idea that maybe she didn't leave a return address, maybe she did not contact the immigration authorities, she just walked away across the continent? If so, how can we assert bad faith to this notary or anyone else? Is there a factual development on that at all? No, Your Honor. I would only say that in the Ninth Circuit, motions to reopen, affidavits which accompany motions to reopen, are deemed to be accepted as true unless inherently unbelievable. And so I think I would first respond by saying that, but then tell you a practical answer, which is I practice in immigration court in New York every day. And in 2012, almost all my hearings were set in 2016 by the immigration judge. And so four years to wait for your hearing is reasonable. And I think this is what her claim is, is that I waited four years for my hearing, I never heard anything, and so I went to seek another attorney. But if, in fact, you had kept the same address, you would have been notified. But the address was the agency, so the agency was notified. She's not arguing the agency wasn't notified. Agency, this is the notary. Correct. They do not notify the actual person? No, because the agency entered their appearance as this is their address. And this seems to be, in my 15 years of practice in immigration, there seems to be a connection between the smuggler who brings the person into a country and that first agency that the smuggler, that the person hires to represent them. Do you want to? Yes, I'll reserve you. Thank you. May I please the Court? Good morning. I'm Tracy Jones on behalf of the Respondent. As a preliminary matter, the Court's concern in regards to whether an ineffective assistance of counsel claim is appropriate here is something that this Court has ruled on before. As the Court has mentioned, in Hernandez v. Mukasey, the Court has stated that it has to be an actual attorney or someone who's representing themselves as an attorney or someone who is believed to be working on behalf of an attorney, which is clearly not the case here. The petitioner admits that she knew that this person wasn't an attorney. So therefore, filing an ineffective assistance of counsel claim is not warranted or could not be sustained here because the person who was representing the petitioner was not an attorney and at no point held themselves out to be an attorney. What do we make about this idea that there is an agency relationship, which apparently is recognized in some areas as a helper? What legal significance does that have? Well, under this Court's case law, you cannot bring an ineffective assistance of counsel claim against someone who is not an attorney or not holding themselves out as an attorney. It's kind of odd, though. If you read the IJ's decision, to be honest, they talk about ineffective assistance and then they talk about, you know, you can have a paralegal or other people and then they say she met in Ray Lozada, which you have to do for ineffective assistance of counsel. So they don't actually, they kind of credit her ineffective assistance of counsel claim but then reject it on the timeliness, correct? Yes, that's correct. So I'm just wondering, since we're not supposed to decide anything that the BIA or the IJ didn't decide, whether we could even decide that anyway under Ventura and whether we'd have to really just go to what the IJ decided, which was it was untimely. And that's correct, Your Honor. Do you agree that we shouldn't even be in Lozada, Hernandez, IAC land? Well, yes, Your Honor, I do agree. If this Court finds that the motion was timely, it should be remanded back to the agency to determine whether the petitioner actually did comply with Lozada and if the petitioner actually showed that she did receive ineffective assistance of counsel. But I did just want to note that because I heard that the Court had had some concerns about that early on. Excuse me a minute there. I thought that the question that Judge McEwen asked you was basically shouldn't we focus on what the BIA did, which was the timeliness as opposed to the IAC claim? Yes. And you said, but if you did, if you're concerned about that under Lozada, we'd send it back. But isn't the government's position that it's really the timeliness that we should go on if we were to decide in favor of the government in terms of the untimeliness of the motion to reopen? Yes, Your Honor. The timeliness is kind of like the preliminary hurdle here that the petitioner has to overcome. Right. And if the Court finds that the petitioner did submit the timeliness, then yes, it should be remanded back to the agency to determine whether or not that assistance was helpful. Okay. So if we did find it was timely. Yes. But otherwise, no. Yes. Okay. Moving on to the equitable tolling argument, the petitioner did not show due diligence in this case. As noted earlier, the petitioner did submit a letter to this notary stating that he intended or she intended to file allegations with the proper authorities on May 2, 2006. The petitioner did not submit their motion to reopen to March 2007, which is well outside the 180-day deadline that is provided for exceptional circumstances to rescind an essential order. The petitioner tries to argue that it was that they did act with indeligence in determining and filing this FOIA request in order to determine the reason why the petitioner's application was denied. And the Board never addressed that. The agency never addressed that. The agency is only concerned about the due diligence after the petitioner learned of the ineffective assistance of counsel, which here was well out of the 180-day deadline. I guess I heard his argument. Maybe I misunderstood it, but I thought he was saying, okay, she knew misdue was a problem. She sent the letter but then felt in order to document for a motion to reopen the issue of changed circumstances that she needed to do the FOIA request, and that took more time, so that I thought he was actually saying that that occurred after she sent the complaint letter to misdue. Would that matter? Well, not in this case because the petitioner did not demonstrate changed circumstances. The circumstances that the petitioner is actually relying on are personal circumstances, which this Court has held is not sufficient to demonstrate changed circumstances. In his opening brief, the petitioner is arguing that they're not actually saying changed country conditions, but instead a change in enforcement of the family planning policy, which does not constitute changed country conditions. This Court has held that, or let me rephrase that. Other courts have held that the enforcement policy varies from geographic location. The evidence that the petitioner submitted is not evidence of an increase in enforcement policy in her native province. Instead, it's just showing that this policy continues to be in effect and continues to be enforced, but it doesn't show that there's an increase in enforcement. The petitioner did submit two affidavits from a neighbor and another person in China who claims to have been either sterilized or had to undergo a forcible abortion. However, those two authors are not similarly situated to the petitioner. Those affidavits indicated that they actually had children in China and not children overseas, which is the case here in the petitioner's case here. Also, this Court has rejected this apparent gaining of the system. The petitioner had an abstention order in 2002 and then filed a motion to reopen in 2007. And during that time of evading immigration authorities, had children, and now tries to offer evidence that now she would be persecuted on the fact that she had these two children in the United States. Counsel, when did the petitioner obtain a licensed attorney to represent her? Do we know that from the record? From my understanding, it wasn't until 2006, if I'm not mistaken. Sometime in 2006. Do you know when? I don't know the exact date, Your Honor. I guess what I'm trying to find out is how long before the date that she ultimately filed her motion to reopen it was. According to my notes, her motion to reopen was filed on March 9, 2007. Yes. So, I'll ask opposing counsel when he comes up again, maybe he can answer this question. When she had counsel, how long before that March 9 date? That she actually... That she actually had licensed counsel familiar with the rules of the proceedings as opposed to the notatio. Okay, I'm not sure, Your Honor. I couldn't quite find it in the record, so maybe we'll ask counsel. Okay. But in 2006, she had filed an FOIA request, right? Yes. Presumably with counsel. I'm assuming, yes, that's why I'm assuming that she retained counsel in 2006. When was the FOIA request, the date? I'm not sure, Your Honor. You said it was three months after she sent the due letter. So, that would still be 2006. Okay. So, because the petitioner here didn't even overcome the preliminary hurdle of demonstrating that equitable tolling is warranted in this case because of the lack of due diligence, the court should go ahead and deny the petition for review. Petitioner also indicated on the actual asylum application this person's address, who is the notary. They didn't at any point in time change the address. So, under this court's or under the BIA's precedent, they're assuming that notice was received and presuming that it was delivered, and the petitioner is not challenging that. And the only thing that's before this court is whether the petitioner acted with due diligence, which the petitioner didn't. So, therefore, the court should deny the petition for review. Thank you. Thank you. I understand the court's concerned with the finality that is supposed to accompany a removal order and to not create a avenue or vehicle for aliens with removal orders to come in through the side door through some exception. My argument is this. Before we get there, counsel, do you know when the petitioner obtained counsel after Ms. Dew was dismissed, in other words, a licensed lawyer? My records indicate that petitioner retained my office in either late May or June 2006. Okay. So, your office was involved for six, seven months, or even more, almost nine months, before the motion to reopen was filed. That's correct, Your Honor. Okay. All right. So, for purposes of analyzing due diligence, even if we put aside Ms. Dew, we have to assume that at that point she did have counsel, counsel was aware of the time arrangements and so on, and, nonetheless, it was not filed until March. Right. And it begs the question why. And I can only tell you an idea or analysis of why. On page 199 of the record, you'll see that the respondent signed her I-599 application, indicating the date of August 2006, within 90 days of discovering the ineffective assistance. Although I do not have notes indicating my conversation with my client, I can say that we filed a lot of motions to reopen during that time, based upon the increased enforcement of the family planning policies. And so, I assume I had a discussion with my client and told her, if you want to pursue that avenue as well as the ineffective, you must obtain evidence from your part of China, or else the motion will have no merit and it will be denied. And so, if there was any lack of due diligence, that may have been my fault, but I would not say it was the petitioner's fault, because if you look at that date on the signature, August 2006, she did exercise due diligence. But it doesn't matter in the end, because ultimately the immigration judge said, well, number one, you can't, as the government counsel says, kind of game the system and have the kids here and then claim, you know, one child policy is going to be implicated. And they cited the Second Circuit case, which I know you're familiar with. So, they said, number one, that doesn't get you there, and that doesn't get you extra time, and it doesn't, you can't win. And then the IJ also said you can't win on the changed country conditions, because you don't really have sufficient evidence. You have one unsigned declaration. You have something else that's not really comparable, and therefore we reject it. So, I guess when I work my way through all the procedure, I wonder, even in the end, if the time matters, because even if it was timely, they rejected those reasons. Although this Court rejected the reasons, I can assure all the judges here, as an officer of the Court, motions to reopen were being granted on these grounds in 2006 and 2007. It wasn't until the Second Circuit decided JHS in 2008 that we really, that avenue was foreclosed, and it wasn't realistic to have a case reopened based upon the analysis the Second Circuit gave. So, I don't have a precedent case. But here's the thing is that this immigration judge signed the order July 07, so it's basically saying at that point there's not a basis for the claim, timeliness or not. So, we would have to overcome the immigration judge's finding, for example, on changed country conditions. If that was our only argument, yes. I'm going to table that argument and ask the Court to focus on the due diligence. And the question is, did the petitioner sit on her knowledge of the problem that arose? And my reply is no, she didn't. She hired an attorney, she prepared a 589, and that would be the only exception. But doesn't her hiring of the attorney basically then impute, now she has an attorney, so she doesn't really get any equitable tolling, due diligence, leeway now that she has an attorney? Well, I would offer that it's my responsibility when you file that motion to reopen is to submit it with the kitchen sink. You don't get many chances. And when somebody's trying their last opportunity to reopen their case to obtain legal status here, you do everything you can, you prepare as best as you can, you submit all the documents that you can obtain in order to... But see, what you're telling me now is inconsistent with what you just said, which is these motions are being granted all the time. Everybody knows that in Fujian Province there's these issues. You've got clients that are doing this. If that's the case, then the evidence should have been pretty readily available. Well, maybe I misspoke. When I say all the time, I said they were happening. It wasn't irregular for it to happen. But they were being granted with supporting evidence, something from the village committee office, something from a neighbor, something from a sister. So they all needed supporting evidence. Counsel, let's... We're out of time, but let's finish the questions. One other question. Yes, sir. This one was 307 days after the due letter. Let's say that you waited two years just trying to gather evidence. Would you be entitled to equitable tolling then? I don't think that would be a reasonable period of time to obtain the evidence you need to submit a motion. And why is that any different than the 307 days? Because obtaining evidence from China to prove that a sterilization and forced abortions are occurring is not that easy. And first you have to find out are there neighbors. Then you have to have the relatives go ask their neighbors. Then the neighbors have to provide a letter. And that's why it took six or seven months. She did what she did because you instructed her to do that. And she filed the I-589 form because you instructed her to do it, right? Yes, Your Honor. Of course. So basically we attribute what she did to your counsel. And whether that was good or bad, the reality is you're stuck with each other in that regard. And we have to analyze this in terms of once she had, and as you've now indicated, somewhere between May and June of 2006 she had a competent, experienced immigration lawyer. And yet it was roughly nine months roughly before the motion to reopen was filed. Correct. That's what we have to analyze. March 2007. Okay. Thank you. All right. Thank you. Thank you very much for the opportunity. Thank both counsel for your argument this morning. The case of Wang v. Holder is now submitted.
judges: Bell, McKeown, Smith